UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>v.<br><br>MARIO ALBERTO HERNANDEZ,<br><br>    Defendant. | Case No. 1:19-cr-00126-DCN<br><br>**MEMORANDUM DECISION AND ORDER** |

## I. INTRODUCTION

Pending before the Court is Defendant Mario Alberto Hernandez's Motion for Compassionate Release pursuant to 18 U.S.C. § 3582(c)(1)(A). Dkt. 48. The Government has filed an opposition to Hernandez's Motion. Dkt. 50. Hernandez filed a reply and supplement soon after. Dkts. 54, 55. The matter is ripe for the Court's consideration.

Having reviewed the record and briefs, the Court finds that the facts and legal arguments are adequately presented. Accordingly, in the interest of avoiding further delay, and because the Court finds that the decisional process would not be significantly aided by oral argument, the Court will decide the Motion without oral argument. Dist. Idaho Loc. Civ. R. 7.1(d)(1)(B). Upon review, and for the reasons set forth below, the Court DENIES the Motion.

## II. BACKGROUND

After pleading guilty to one count of distribution of methamphetamine, the Court

sentenced Hernandez to 132 months of incarceration with five years of supervised release to follow. Dkt. 44. At this time, Hernandez's release is set for August 30, 2028. Dkt. 50, at 3. Hernandez has served approximately 40% of his current sentence; 53 months served with about 79 months remaining of his sentence. Hernandez is incarcerated at Victorville Medium I Federal Correctional Institution ("FCI Victorville").

Relevant to his current sentence, Hernandez distributed, or planned to distribute, 1,158.20 grams of actual methamphetamine. Dkt. 39, at 5. On two occasions in March 2019, Hernandez sold approximately four ounces (two ounces per time) of actual methamphetamine for $900 each to a confidential source (CS) and an undercover officer (UC) respectively. Dkt. 39, at 4. Later, on March 25, 2019, Hernandez sold another four ounces of actual methamphetamine to an UC for $1,600. *Id.* On April 17, 2019, police arrested Hernandez at a truck stop in Mountain Home and seized 988.90 grams of actual methamphetamine from his vehicle. *Id.* at 5. Prior to Hernandez's instant offense, he engaged in a lengthy criminal history that spanned five decades. *Id.* at 7–12. While dated, that history includes violent and nonviolent offenses and both state and federal felonies. *Id.* Likewise, Hernandez's history includes possession and delivery of controlled substances charges. *Id.*

In October 2020, Hernandez petitioned the Warden at FCI Victorville for Compassionate Release. Dkt. 48, at 6. The request was denied. *Id.* On May 25, 2021, Hernandez filed the instant Motion for Compassionate Release with the Court. *Id.* He bases this request on his lifelong type 1 diabetes diagnosis and lingering post-COVID-19 symptoms. *Id.* at 3, 7. Hernandez's BOP health record indicates a history of diabetes,

MEMORANDUM DECISION AND ORDER - 2

neuropathy, and recovery from COVID-19 on March 15, 2021. *Id.* at 9–10. The government opposes Hernandez's motion. Dkt. 50. Hernandez filed a reply brief adding neuropathy, obesity, and a need for foot and back surgery to his reason for this request. Dkt. 54.

Hernandez contends that he suffers from Post-Acute Sequelae of SARS CoV-2 infection, or lingering COVID-19 symptoms, including headaches, body aches, fatigue, and depression. Dkt. 48, at 6. However, Hernandez has not provided any medical records showing lingering COVID-19 symptoms. Additionally, he has not provided medical records showing obesity or the needed back and foot surgeries.

### III. LEGAL STANDARD

Hernandez seeks compassionate release under the First Step Act ("FSA"), newly amended 18 U.S.C. § 3582(c)(1)(A), which allows a court to modify a sentence under certain circumstances.[1] In order to grant compassionate release, a district court must, as a threshold matter, determine whether a defendant has exhausted his or her administrative remedies. *Id*. Next, a district court may grant compassionate release only if "extraordinary and compelling reasons warrant such a reduction," and the reduction is "consistent with

---

[1] "Prior to the passage of the FSA, only the Director of the Bureau of Prisons . . . could file a motion for compassionate release, and that very rarely happened." *United States v. Shields*, 2019 WL 2359231, at *1 (N.D. Cal. June 4, 2019) (quoting *United States v. Gutierrez*, 2019 WL 1472320, at *1 (D.N.M. Apr. 3, 2019). The FSA amended 18 U.S.C. § 3582(c)(1)(A) to permit modification of a term of imprisonment upon motion of the Director of the BOP or upon motion of the defendant after the defendant has exhausted his/her administrative rights. FSA, Pub. L. No. 115-391, 132 Stat. 5194 (Dec. 21, 2018).

applicable policy statements" issued by the U.S. Sentencing Commission.[2] *Id*. If the latter criteria are met, the district court must then consider the sentencing factors set forth in 18 U.S.C. § 3553(a) to the extent they are applicable. *Id*.; *United States v. Rodriguez*, 424 F. Supp. 3d 674, 680 (N.D. Cal. 2019).

## IV. DISCUSSION

### A. Exhaustion of Administrative Remedies

The FSA allows a motion for modification to be made by either the Director of the BOP, or by a defendant "after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier[.]" 18 U.S.C. § 3582(c)(1)(A). In addition, "[e]xhaustion occurs when the BOP denies a defendant's [motion for compassionate release]." *United States v. Mondaca*, No. 89-cr-0655 DMS, 2020 WL 1029024, at *2 (S.D. Cal. March 3, 2020).

Hernandez submitted a request for Compassionate Release with the Warden of his facility in October 2020. Dkt. 48, at 6. His request was denied. *Id*. Because Hernandez filed his present Motion after his request to the Warden was denied, the Court finds that he has exhausted his administrative remedies.

---

[2] Congress did not define what constitutes "extraordinary and compelling" reasons; instead, it deferred consideration of the matter to the Sentencing Commission. *Rodriguez*, 424 F. Supp. 3d at 681 (citing 18 U.S.C. § 994(t) ("The Commission, in promulgating general policy statements regarding the sentencing modification provisions in section 3582(c)(1)(A) of Title 18, shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples.").

MEMORANDUM DECISION AND ORDER - 4

**B. Extraordinary and Compelling Reasons**

Having determined that Hernandez has exhausted his administrative remedies, the Court must next consider whether "extraordinary and compelling reasons" warrant a permanent reduction in his sentence, and whether "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A)(i). Hernandez bears the burden of establishing that compelling and extraordinary reasons exist to justify compassionate release. *United States v. Holden*, 452 F. Supp. 3d 964, 969 (D. Or. Apr. 6, 2020).

Before passage of the FSA, the Sentencing Commission limited "extraordinary and compelling reasons" to four scenarios: (A) medical conditions of the defendant; (B) age of the defendant; (C) certain family circumstances; and (D) as determined by the Director of the BOP, other extraordinary and compelling reasons that exist either separately or in combination with the previously described categories. U.S.S.G. § 1B1.13 Application Note 1.

However, the Sentencing Commission "never harmonized its policy statements with the FSA." *Rodriguez*, 424 F. Supp. 3d at 680 (quoting *United States v. Brown*, 411 F. Supp. 3d 446, 449 (S.D. Iowa 2019)). "Rather, the outdated policy statements still assume compassionate release 'may be granted only upon motion by the Director of the Bureau of Prisons.'" *Brown*, 411 F. Supp. 3d at 449 (quoting U.S.S.G. § 1B1.13 Application Note 1). This assumption is no longer consistent with the law under the FSA, which allows defendants to seek relief directly from the court. As such, the question of whether district courts are strictly bound by the Sentencing Commission's statements in U.S.S.G. § 1B1.13

MEMORANDUM DECISION AND ORDER - 5

when considering prisoners' motions for compassionate release—as they are when considering motions by the Director of the BOP—was momentarily left open. The Ninth Circuit has recently answered that question in the negative. *See United States v. Aruda*, 993 F.3d 797, 801 (9th Cir. 2021) (holding that "the current version of U.S.S.G. § 1B1.13 is not an 'applicable policy statement[ ]' for 18 U.S.C. § 3582(c)(1)(A) motions filed by a defendant."). Therefore, the guidelines in U.S.S.G. § 1B1.13 "may inform a district court's discretion for § 3582(c)(1)(A) motions filed by a defendant, but they are not binding." *Id.*

Nonetheless, Hernandez's motion suggests that one of the specific scenarios set out in U.S.S.G. § 1B1.13 applies in this case. He argues that his diabetes and post-covid complications constitute an extraordinary and compelling circumstance necessitating compassionate release under the "medical condition" scenario in subdivision (A) of U.S.S.G. 1B1.13, Application Note 1.[3] Dkt. 48. Hernandez's BOP medical records indicate that he is a type 1 diabetic. *Id.* at 12.

---

[3] The "medical condition of the defendant" may constitute an extraordinary and compelling reason for release where:

    (A)    Medical Condition of the Defendant.—

    (i)    The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

    (ii)    The defendant is—

    (I)    suffering from a serious physical or medical condition,

As an initial matter, the Court notes that Hernandez's age and some of his medical conditions likely do place him at a higher risk of contracting a severe form of COVID-19. The CDC lists type 1 and type 2 diabetes as underlying health conditions that can place individuals at an increased risk of severe illness from COVID-19.[4] However, the Government argues, and the Court agrees, that Hernandez's vaccination status and prior recovery from COVID-19 without hospitalization weighs heavily against a finding of extraordinary and compelling circumstances.

The Government points out that Hernandez received at least one dose of the COVID-19 Pfizer vaccine, although it appears that he may not have received his second dose. Dkt 50, at 10. According to the CDC, full Pfizer vaccination "was 94% effective against COVID-19 hospitalization," and "64% effective among partially vaccinated adults aged [greater than or equal to] 65 years."[5] Many courts have found that prisoners who refuse COVID-19 vaccinations cannot present extraordinary and compelling

---

    (II)    suffering from a serious functional or cognitive impairment, or

    (III)    experiencing deteriorating physical or mental health because of the aging process,

that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

U.S.S.G. § 1B1.13, Application Note 1(A).

[4] *CDC Updates, People with Certain Medical Conditions,* (Updated December 14, 2021) https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html.

[5] Center for Disease Control and Prevention, *Effectiveness of Pfizer-BioNTech and Moderna Vaccines Against COVID-19 Among Hospitalized Adults Aged ≥65 Years — United States, January–March 2021*, https://www.cdc.gov/mmwr/volumes/70/wr/mm7018e1.htm?s_cid=mm7018e1_w (last accessed January 24, 2022).

MEMORANDUM DECISION AND ORDER - 7

circumstances, even in the presence of underlying health conditions. *See United States v. Jackson,* 2021 WL 1145903 (E.D. Pa. Mar. 25, 2021) (noting that a prisoner suffering from obesity, type II diabetes, hypothyroidism, hypertension, asthma, and high cholesterol did not present extraordinary and compelling circumstances because there was "no apparent medical reason" that the prisoner declined the vaccine); *United States v. Austin*, 2021 WL 1137987, *2 (E.D. Mich. Mar. 25, 2021) (holding that "[a] prisoner cannot on the one hand point to the risk of severe illness, while on the other hand refuse to participate in basic precautionary measures such as vaccination"). The Court agrees with this reasoning. It makes little sense for a prisoner to argue that he must be released because of the risk posed by COVID-19 while at the same time refusing to complete a readily available vaccine treatment that mitigates that risk almost entirely. Indeed, doing so would likely encourage prisoners to remain unvaccinated.

Also, Hernandez contracted and recovered from his February–March 2021 COVID-19 infection without additional hospitalization. Those who have recovered from an initial COVID-19 infection are typically at a lower risk for future infections. *See United States v. Pavao-Kaaekuahiwi*, 2020 WL 7700097, at *3 (D. Haw. Dec. 28, 2020); *United States v. Andrews*, 2020 WL 7714708, at *4 (D. Nev. Dec. 29, 2020). Having both recovered from COVID-19 and received at least one dose of the vaccine, Hernandez is likely at a decreased risk of severe complications from a reinfection of COVID-19. In fact, recovering from COVID-19 without additional hospitalization or severe complications suggests that Hernandez would likely recover similarly if exposed to COVID-19 again.

Additionally, there is no evidence to suggest that Hernandez would be at lower risk

MEMORANDUM DECISION AND ORDER - 8

to contract the virus if he were released. Multiple courts have denied compassionate release to prisoners, even those with high-risk medical conditions, because many of them would likely be less-exposed to the pandemic by remaining at the prison. *See United States v. Singui*, 2020 WL 2523114, at *4 (C.D. Cal. May 12, 2020) (denying compassionate release to inmate with diabetes, high blood pressure, and high cholesterol; observing that "there is little evidence that [the defendant] is presently at greater risk of contracting the virus at MDC than in the general population: MDC has no current reported infections, inmates at MDC are housed in separate units, and the staff at MDC has undertaken a variety of interventions [] to prevent the virus from reaching and spreading within the prison"); *United States v. Hembry*, 2020 WL 1821930, at *2 (N.D. Cal. Apr. 10, 2020) (denying motion for inmate with diabetes based on COVID-19 risks where, *inter alia*, the incarcerated movant was "housed at a facility with no reported infections").

In the instance case, FCI Victorville reported 113 positive cases and 3 deaths on January 21, 2022.[6] Hernandez requests he be able to reside with family in Elgin, Texas in his release plan. Dkt 48, at 14. As of January 20, 2022, Elgin, Texas has had at least 14,333 cases of COVID-19; this number may be greater depending on the specific part of Elgin.[7]

---

[6] Federal Bureau of Prisons, COVID-19 Information, available at https://www.bop.gov/coronavirus/ (last accessed January 21, 2022).

[7] Elgin, Texas is partially in both Bastrop and Travis County. Bastrop county has at least 14,333 confirmed cases of COVID-19; Travis County has at least 176,814 confirmed cases. Texas Department of State Health Services, COVID-19 Dashboard. Available at https://www.arcgis.com/apps/dashboards/45e18cba105c478697c76acbbf86a6bc (last accessed January 21, 2022).

MEMORANDUM DECISION AND ORDER - 9

It is likely, although not dispositive, that Hernandez would be at an equal or greater risk of contracting COVID-19 in Elgin, Texas.

The Court notes that Hernandez would like to become the caregiver to his brother Pete Hernandez, who has had his legs amputated. Dkt. 54, at 7. While admirable, Hernandez fails to show the "family circumstances" required for an extraordinary and compelling reason necessitating compassionate release under subdivision (C) of U.S.S.G. 1B1.13, Application Note 1.[8] Here, Hernandez's brother is not the caregiver to Hernandez's minor child, nor is his brother a spouse or domestic partner that Hernandez would be the only available caregiver for. The family circumstances outlined by Hernandez do not constitute an extraordinary and compelling reason for release under the statute.

The Government also argues that the 18 U.S.C. § 3553(a) factors weigh against Hernandez's release.[9] Dkt. 48, at 12–13. The Court agrees. Hernandez has failed to

---

[8] The "family circumstances" of the defendant may constitute an extraordinary and compelling reason for release where:

    (C)    Family Circumstances.—

    (i)    The death or incapacitation of the caregiver of the defendant's minor child or minor children.

    (ii)    The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.

U.S.S.G. § 1B1.13, Application Note 1(C).

[9] Factors To Be Considered in Imposing a Sentence.—The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider—[. . .]

demonstrate how release, after having served less than half of a sentence for his distribution of methamphetamine crime, reflects the seriousness of the offense, promotes respect for the law, and provides just punishment for the offense. As outlined in the Presentence Investigation Report, Hernandez is serving time for distributing, or planning to distribute, over a kilogram of methamphetamines. Dkt. 39, at 5. There is no indication that he intended to discontinue his illegal behavior without police intervention. Moreover, he has a lengthy criminal history that spans five decades. *Id.* at 7–12. While largely dated, that history includes violent and nonviolent offenses and both state and federal felonies. *Id.* Despite multiple prison sentences, Hernandez has continued to recidivate. The Court agrees with the Government's argument that the public is currently best protected by Hernandez's continued incarceration. As such, all four factors set forth in U.S.C. § 3553(a)(2) weigh against releasing Hernandez early.

In sum, the Court finds that Hernandez has exhausted his administrative remedies. However, he has failed to demonstrate an "extraordinary and compelling reason" for his release (under the "medical" or "family circumstances" prongs of the statute), and has

---

(2) the need for the sentence imposed—

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

18 U.S.C. § 3553(a).

MEMORANDUM DECISION AND ORDER - 11

failed to show that such a reduction in his sentence is consistent with the goals of the 18 U.S.C. § 3553(a) sentencing factors. Weighing all relevant factors, the Court cannot depart from its prior sentence and release Hernandez at this time. Accordingly, the Court must DENY Hernandez's motion.

## V. ORDER

The Court HEREBY ORDERS:

1. Hernandez's Motion for Compassionate Release (Dkt. 48) is DENIED.

DATED: February 2, 2022

David C. Nye
Chief U.S. District Court Judge